[This decision has been published in *Ohio Official Reports* at 97 Ohio St.3d 489.]

OFFICE OF DISCIPLINARY COUNSEL *v*. ZEMBA.

[Cite as *Disciplinary Counsel v. Zemba*, 2002-Ohio-6725.]

*Attorneys at law—Misconduct—Permanent disbarment—Conviction of reckless homicide—Engaging in an unlicensed childcare business that required a license.*

(No. 2002-1447—Submitted October 15, 2002—Decided December 18, 2002.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 01-94.

———————————

**Per Curiam.**

{¶1} We are asked in this case to determine the sanction for an attorney who pleaded guilty to a charge of reckless homicide, a felony of the third degree (R.C. 2903.041) and who engaged in an unlicensed childcare business that required a license. The Board of Commissioners on Grievances and Discipline found that respondent, Karen K. Zemba of Independence, Ohio, Attorney Registration No. 0037836, committed these acts and thereby violated DR 1-102(A)(3) (engaging in conduct involving moral turpitude), 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (engaging in conduct that is prejudicial to the administration of justice), and 1-102(A)(6) (engaging in conduct that adversely reflects on the lawyer's fitness to practice). The board recommended that respondent be permanently disbarred from the practice of law in Ohio. In view of the misconduct in this case, respondent's disciplinary record, and the fact that no compelling mitigating circumstances warrant a more lenient disposition, we agree that disbarment is appropriate.

{¶2} Respondent has engaged in the practice of law on a very limited basis since her admission in 1987. Her practice of law involved no more than the

handling of a few miscellaneous legal matters for relatives. Over the past 12 years, respondent has engaged in childcare services as her primary occupation.

{¶3} On August 24, 2000, respondent was caring for a 17-month-old child, under an arrangement with the child's parents, in her home in Independence, Ohio. That day, respondent was caring for seven other children, ranging in age from 4 months to 3 years old, including one of her own children.

{¶4} Respondent does not operate a licensed childcare facility, and on the date in question, she was in violation of R.C. 5104.02, which requires a license for anyone who cares for more than six children in the home.

{¶5} At approximately 2:30 p.m., respondent placed the 17-month-old child in an upstairs playpen for a nap. At approximately 4:00 p.m., respondent checked on the child and found she was not breathing. The child was pronounced dead approximately an hour later. The coroner's report declared the cause of death to be "[a]sphyxia due to entanglement of bedsheet around neck" and declared an "other condition" of "[r]ecent ingestion of diphenhydramine." The coroner's verdict characterized the death as "homicidal in nature."

{¶6} The coroner's toxicology report indicated that the child had diphenhydramine hydrochloride in her system at an adult therapeutic level. Diphenhydramine hydrochloride is an ingredient in Benadryl.

{¶7} Respondent was questioned by police about the presence of diphenhydramine hydrochloride in the child's system, but did not volunteer an explanation until September 11, 2000. She then admitted that the child had a runny nose at lunch and that she gave the child ½ teaspoon of Benadryl. Later that day, respondent recanted the admission.

{¶8} The grand jury indicted respondent on one count of involuntary manslaughter (R.C. 2903.04) and one count of child endangering (R.C. 2929.22). On July 31, 2001, respondent pleaded guilty to reckless homicide (R.C. 2903.041), a third-degree felony. Respondent was thereafter sentenced to five years of

community control with conditions including six months of monitored house arrest and was ordered not to operate any childcare facility or to provide any childcare.

{¶9} Upon inquiry about the felony conviction by the relator, Office of Disciplinary Counsel, respondent, in a letter dated October 31, 2001, explained the circumstances surrounding her conviction. Respondent claimed that the possibility of years of litigation, including a civil suit, prompted her to plead guilty to the lesser included offense of reckless homicide. Respondent claimed that the judge indicated to her defense attorney that he was going to grant her motion to suppress evidence due to violations of her constitutional rights by police unless the prosecutor negotiated a plea bargain. Upon inquiry from relator, the presiding judge in respondent's criminal case denied ever telling anyone that he would grant the motion to suppress. The judge also denied respondent's indication that he settled and dismissed the civil action brought against respondent by the parents of the deceased child.

{¶10} This court imposed an interim felony suspension pursuant to Gov.Bar R. V(5)(A)(4). *In re Zemba* (2001), 93 Ohio St.3d 1493, 758 N.E.2d 1145. Relator investigated the allegations of respondent's professional misconduct and filed a complaint on November 29, 2001, charging respondent with violations of the Code of Professional Responsibility.

{¶11} A hearing was held before a panel of the Board of Commissioners on Grievances and Discipline on May 22, 2002, in Cleveland. Respondent appeared pro se and called only her husband, also an attorney, as a witness. Respondent stated that she took responsibility for the death of the child under her care and continued to deny having given the child Benadryl. In her deposition, respondent claimed that she had not had the money necessary to fully contest the criminal charges against her. However, at the hearing before the panel, she claimed that money was not the reason she had pleaded guilty. Rather, respondent asserted that she did not have the emotional strength to go through a trial. Respondent also

admitted to making inconsistent statements to police during the investigation of the child's death.

{¶12} The panel found that respondent "was not completely forthcoming" during the hearing concerning a disciplinary complaint filed against her as a result of insurance fraud charges in 1989. Both the panel and the board recommended that respondent be permanently disbarred from the practice of law in Ohio.

{¶13} We agree that respondent violated DR 1-102(A)(3), 1-102 (A)(4), 1-102(A)(5), and 1-102(A)(6). We also agree that respondent should be disbarred. "[P]ermanent disbarment is an appropriate sanction for conduct that violates DR 1-102 and results in a felony conviction." *Disciplinary Counsel v. Gallagher* (1998), 82 Ohio St.3d 51, 52, 693 N.E.2d 1078. No mitigating circumstance justifies leniency in this case. Accordingly, respondent is permanently disbarred from the practice of law in Ohio. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

––––––––––––––––––

Jonathan E. Coughlan, Disciplinary Counsel, and Gloria J. Sigman, Assistant Disciplinary Counsel, for relator.

––––––––––––––––––